**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Richard Lee WORTHON,
Defendant-Appellant.**

**No. 10983.**

Missouri Court of Appeals,
Southern District,
Division Three.

June 28, 1979.

Motion for Rehearing and/or Transfer
Denied July 25, 1979.

Application to Transfer Denied
Sept. 11, 1979.

further hearing the evidence would be essentially the same as on the hearing of the original motion. Upon that basis the renewed motion was overruled.[2] Since the defendant's resistance to this evidence was obvious and no one was misled, the admissibility of that evidence will be fully reviewed.[3]

John D. Ashcroft, Atty. Gen., Paul Robert Otto and Steven Scott Clark, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Blair Buckley, Jr., Caruthersville, for defendant-appellant.

MAUS, Judge.

A jury found the defendant guilty of Robbery in the First Degree. As recommended by the jury he was sentenced to life imprisonment. On appeal his sole allegation of error is the action of the trial court in overruling a motion to suppress evidence consisting of items of clothing. While the defendant made no objection when the evidence was offered,[1] he immediately before trial did by way of an oral motion again seek to suppress this evidence. At this time the state and defendant agreed that upon a

At approximately 8:00 p. m. on April 23, 1977, a black male entered Brown's Grocery and Package Store in Hayti Heights, Missouri. This man got a catsup bottle, broke it over the checkout counter, leaped the counter and as proprietor Brown said, he "went to cuttin' me with that bottle, stuck it in my throat there". The attacker announced, "This is a holdup" and Brown replied, "The heck it is". A struggle ensued and the parties fell to the floor.

Willie Moorehead, a customer in the back of the store heard the bottle break. He went to the front and tried to pull the assailant from Brown. Moorehead couldn't, but when the assailant got Brown's billfold he turned Brown loose. Moorehead knew the assailant. Before leaving the assailant shoved Moorehead backward and said to him: "You ain't got nothin' to do with this."

A short time later the defendant was arrested at the home of his parents, Elbert and Jessie Worthon. At the time of the arrest, under circumstances to be referred to, the officers seized a pair of socks, a pair of wet, muddy shoes, a jacket and overalls which were wet and stained.

At the trial, Brown and Moorehead recounted the events of the evening. Each unequivocally identified the defendant as the guilty party. Moorehead confirmed the fact he had known the defendant a long time, knew him by name and recognized

1. Normally required. "In addition to the above, it is immaterial that a motion to suppress evidence may have been improperly overruled if the evidence which is the subject of the motion is not subsequently received in evidence, or if received it is not objected to, or if received and objected to it is not challenged on appeal on the ground that it was improperly admitted in evidence." *State v. Davis*, 547 S.W.2d 482, 487 (Mo.App.1976).

2. This was in accordance with approved procedure. *State v. Lewis*, 526 S.W.2d 49 (Mo.App. 1975).

3. *State v. Abbott*, 571 S.W.2d 809 (Mo.App. 1978).

him at the scene of the crime, even though he had not seen him for a long time. (Defendant testified he had been gone 13½ years and returned to his mother's only the day before the incident). In addition, the shoes and socks, jacket and overalls were admitted. A qualified criminologist identified the staining material on the overalls as similar in nature to dried tomato catsup and the density of bits of glass taken from the overalls as the same as the catsup bottle. The defendant denied the crime and denied seeing the overalls before.

Both parties offered evidence at the hearing upon the motion to suppress. City Marshall Trawick, Deputy Sheriff Young and Highway Patrolman Davis (who coincidentally was the son-in-law of owner Brown) were offered by the state. A summary of that evidence, based primarily upon the testimony of Trawick, with allegedly conflicting testimony being noted, is as follows: Trawick was informed of the robbery by radio and immediately went to the store. He found Brown sitting on the counter bleeding and obtained a description of the assailant, which matched the description of someone Trawick knew. He suspected the defendant. He was told the assailant crossed the highway and went south on Rapoport Street. After Trawick crossed the highway he met several children and asked if they had seen anyone fitting the description. He was told "the fellow" had just met them running. After Trawick had gone to the first street he saw a man fitting the description running through the park or vacant lot. When the man crossed the road Trawick recognized him as the defendant. The suspect ran to the Elbert Worthon residence. Trawick radioed for assistance.

He was joined by various law enforcement officers. After they arrived Trawick and Davis went to the door and knocked. Melody Ann Worthon (sister of defendant) came to the door. Davis asked if the defendant was there and was told he was not. Upon a request for admission she was advised they had no search warrant but would wait until they got one. Trawick said Mr. Worthon came to the door and told them to come in, that a search warrant wasn't needed. Davis said Mrs. Worthon came into the living room, invited them in, and told him she didn't mind if they searched. When Trawick and Davis entered Deputy Sheriff Young came in.

The officers found the defendant coming from the bathroom, clad only in a towel. He was arrested for investigation of armed robbery. While in the bedroom dressing, he attempted to shove the shoes and socks in question under the bed. This was observed by Davis and he seized the shoes and socks.

The defendant was then taken outside the home and transported to jail by another officer. Davis, Trawick and Young returned to the house and requested (not demanded) to search the bedroom. Davis testified permission was granted by Mrs. Worthon. Trawick testified permission was granted by both Mr. and Mrs. Worthon. The jacket and overalls were found between the mattress and springs.

Mrs. Worthon testified that when the officers knocked she was in the bathtub. When she came into the living room the officers were there. She denied granting any permission, at first denied any conversation, but later stated she didn't remember what was said. She said the officers had their guns drawn and she was frightened.

Melody Ann Worthon said she too was in the bathroom when the officers knocked. In response to the officers' request for admission she asked her mother. Her mother said "yes, for them to come on in." Later she said she wasn't sure.

In his brief in asserting the invalidity of the search and seizure the defendant in part relies upon testimony at the trial. Whether or not this court in reviewing the validity of a search and seizure is, under all circumstances, required or even authorized to consider testimony on that issue at the trial as well as that offered upon the hearing on the motion has not been fully developed in this state.[4] However, it is obvious the trial

4. It is said: "When a motion to suppress evidence is overruled in a pretrial hearing the only

determination for the trial court at the trial proper is 'whether the confiscated evidence is

court, even in the absence of objection or motion, considered the trial testimony as bearing upon admissibility.[5] That testimony, while necessarily not of the same scope, was, with minor variations, consistent with the pretrial testimony. The variances noted are minor and if they be inconsistencies, are not such as to diminish the probative value of the pretrial testimony. Additional facts bearing on admissibility were developed at the trial. These include: a description of the subject as a black male of medium build, wearing a dark jacket, and with plaited hair; that when he first sighted the suspect, Trawick could see the dark jacket but could not tell about the hair; the ground was wet and muddy; Trawick arrived at the store in approximately 3 minutes after notification, stayed 1½ minutes, and pursued the suspect by automobile; the store was approximately one half mile from the Worthon home; and that the bedroom was shared with six brothers who came and went. For reasons hereafter stated, we hold the motion to suppress was properly overruled. Extending to the defendant the consideration of the trial testimony, without deciding we are required to do so, we find the trial testimony did not militate against the previous ruling, but supported it.

■ We first consider the seizure of the shoes and socks. Defendant asserts the arrest was unlawful, arguing lack of probable cause because the defendant could have walked from the store into the home before being observed and Trawick saw only a man running, wearing a dark jacket. It was sufficient that Trawick, obviously within a few minutes of the crime, after receiving the information from the children, observed a man fitting the general description of the suspect running away from the scene. *State v. Dodson*, 491 S.W.2d 334 (Mo.1973); *State v. Pettis*, 522 S.W.2d 12 (Mo.App.1975). These circumstances are buttressed by the fact the description given Trawick matched someone he knew and he recognized the defendant when he crossed the street. Based upon all of the facts "determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act", *State v. Pruitt*, 479 S.W.2d 785, 788 (Mo. banc 1972), the officers had reasonable grounds for a belief of guilt. That was all that was required. *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975); *State v. Pruitt, supra*, at 788; *State v. Novak*, 428 S.W.2d 585 (Mo.1968).

■ The arrest being valid, the officer properly allowed the defendant to dress and to maintain control while he did so. He had a right to search the defendant and the area in which he could reach a weapon or destroy evidence, in this instance under the bed. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Wiley, supra*, at 290–292. Further, since the officer was rightfully in the bedroom, he properly seized the shoes and socks which were in "plain view". *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Williams*, 554 S.W.2d 524 (Mo.App.1977); *State v. Toney*, 537 S.W.2d 586 (Mo.App.1976). The facts are remarkably similar to *United States v. Di Stefano*, 555 F.2d 1094 (2nd Cir. 1977) in which it was observed:

competent and relevant.' " *State v. Gailes*, 428 S.W.2d 555, 559 (Mo.1968). "The legality of a seizure of property is to be determined from the evidence adduced on the motion to suppress the evidence." *State v. Johnson*, 463 S.W.2d 785, 786 (Mo.1971). However, "[a] trial court's ruling on a motion to suppress evidence prior to trial is, in a sense, interlocutory in nature. The real damage is not done until the evidence is introduced in the trial of a case for consideration by a jury. Thus, a trial court can receive additional evidence and change its ruling prior to admitting the objected-to items

in evidence before a jury." *State v. Howell*, 524 S.W.2d 11, 19 (Mo. banc 1975). And, it has been said, "[i]n ruling this point on appeal we will consider all of the evidence bearing on the question." *State v. Hohensee*, 473 S.W.2d 379, 380 (Mo.1971). The subject is thoroughly discussed in Kamisar, LaFave & Israel, Modern Criminal Procedure, ch. 12, (1974).

5. During defendant's evidence the jury was excused and the nature of defendant's use of the bedroom was developed.

The officers had a duty to find clothing for Sally to wear or to permit her to do so. Having permitted Sally to retire to her bedroom to dress, Officer Christie was clearly justified in accompanying her to maintain a 'watchful eye' on her and to assure that she did not destroy evidence or procure a weapon. Since the evidence shows that the officer's entry into the bedroom was solely for the purpose of maintaining control over Sally while she dressed, it is clear that discovery of the money bag in plain view was 'inadvertent', p. 1101. (Citations omitted).

■ The defendant urges that the arrest was invalid because the officers had no permission to enter the residence. He cites inconsistencies in the state's evidence concerning who gave permission. We find no such inconsistencies. While at one point Mrs. Worthon denied giving permission, she later testified she didn't remember what was said. Davis testified Mrs. Worthon gave such permission. This was verified by her daughter. Trawick testified Mr. Worthon gave such permission. Under the circumstances it is entirely reasonable that one officer was communicating with one parent and the other officer with the other parent. The testimony was sufficient to establish permission by a preponderance of the evidence. The arrest and seizure were valid. *Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

■ Concerning the jacket and overalls, they were found as a result of a search with permission. Davis testified that after the officers returned to the house he asked and was granted permission to search by Mrs. Worthon. Trawick testified permission was given at this time by both Mr. and Mrs. Worthon. Other than the indecisive testimony of Mrs. Worthon, there is no evidence to the contrary. Again, the testimony was sufficient to establish permission by the preponderance of the evidence.

■ The fact permission was not given by the defendant does not, as he urges, make the search invalid. This is not a case where a child rented a room that no one else was supposed to enter as in *State v. Peterson,* 525 S.W.2d 599 (Mo.App.1975). Under the circumstances of this case it is well settled that a parent may grant permission for a search. *United States v. Wright,* 564 F.2d 785 (8th Cir. 1977); *Maxwell v. Stephens,* 229 F.Supp. 205 (E.D.Ark. 1964), aff'd, 348 F.2d 325 (8th Cir.) cert. denied, 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965); *State v. Pruitt,* supra, at 788; *State v. Williams,* 536 S.W.2d 947 (Mo.App.1976).

■ Finally, the defendant would vitiate the consent because it was not voluntary. It is true the burden of proving a voluntary consent is upon the state, *State v. Berry,* 526 S.W.2d 92, 98 (Mo.App.1975) which is to be determined from " 'the totality of all the [surrounding] circumstances' ". *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The presence of officers with arms (not shown to be displayed when the second permission was given) is but one factor. *State v. Pinkus,* 550 S.W.2d 829 (Mo.App.1977). Initial permission was given when only two officers were apparent. That the parents were not advised of a right to refuse may be considered but does not cause the consent to be involuntary. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *State v. Berry,* supra, at 98. The testimony of Mrs. Worthon that she was frightened does not establish the consent to be involuntary. Her testimony is self destructive. She does not say, or even suggest, she gave permission because she was frightened. She denies she gave permission. Mr. Worthon's permission was not questioned. The officers were explicit that they did not demand but requested permission. The "totality of the circumstances" establishes the permission to have been voluntary. *State v. Abbott,* 571 S.W.2d 809, supra, at 812; *State v. Pinkus,* supra, at 835; *State v. Rush,* 497 S.W.2d 213, 215 (Mo.App.1973).

The judgment is affirmed.

BILLINGS, P. J., FLANIGAN, C. J., and GREENE, J., concur.