**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James CARPENTER,
Defendant-Appellant.**

**No. 14133.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 5, 1986.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 24, 1986.

Application to Transfer Denied
Jan. 13, 1987.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Lew Kollias, Columbia, for defendant-appellant.

TITUS, Judge.

Defendant was jury-convicted of stealing a 1976 Volkswagen owned by Cari Morgan. Having been charged and found to be a prior and persistent offender, defendant was court-sentenced to ten years imprisonment.

Between 11:15 and 11:30 p.m. of the Saturday in question, Ms. Morgan and a companion drove to a Joplin lounge. Ms. Morgan left her car keys and purse in the Volkswagen when she and her friend went into the bar. Upon returning to where she had left the vehicle a few minutes later, Ms. Morgan discovered the car (and obviously its contents) had been stolen. Joplin police were notified.

Near 3 a.m. the ensuing Sunday, Joplin policemen Silvestrini and Warren, driving separate automobiles, received radio advice that Webb City police were in pursuit of a vehicle matching the description of the stolen car. The named officers drove to the Joplin area where the Volkswagen was headed. Silvestrini espied the chase which culminated when the Volkswagen went out of control and collided with Silvestrini's police car. The collision occurred about 150 feet from George Hempen's home. The Volkswagen's driver fled the scene afoot leaving in that vehicle a man's blue tennis shoe, a woman's purse and a .22 caliber weapon. Webb City and Joplin police were unable to find the Volkswagen driver on that very rainy and foggy morning in the muddy field where he was supposedly hiding.

Police officer Warren returned to the search area at approximately 6:30 a.m. and saw defendant walking west about two miles from the accident scene wearing wet muddy clothing and rubber boots two or three sizes too large. Warren asked defendant if he could be interviewed and defendant consented. As Warren was completing an interview card, Sergeant Copeland of the Joplin Police arrived and asked defendant to go to the station for an interview. Defendant again agreed while telling the officers he had been walking from a friend's home in Carthage, some 15 miles away.

Upon arriving at the police station, defendant read and signed the Joplin Police Department's Advice of Rights form, i.e., "Miranda Rights." Thereafter defendant made a statement and later a recorded statement, in question and answer form, wherein he admitted stealing the Volkswagen and fleeing the scene of the accident. Defendant also admitted taking the rubber boots which George Hempen identified as belonging to him and which had

been taken from outside his home. Defendant never requested an attorney.

In his first point relied on defendant asserts the trial court erred in overruling his challenge for cause to prospective juror Audrey E. Roragen "because said juror gave answers on voir dire which were indicative of an inability to sit as a fair and impartial juror in that the juror indicated she might give greater weight to testimony of an officer than to other witnesses, prejudicing appellant since the principal testimony utilized by the state at trial came from witnesses who were police officers."

The point has the following background. During voir dire, defense counsel asked the panel the general question if there is "anybody, who for any reason, believes that the testimony of a police officer is more dependable than the testimony of other people, simply because he is a police officer.... There anybody that feels this way?" There was no response but near the end of defense counsel's questioning the following occurred:

Q Again, is there anybody else who feels for any reason that possibly you should not be sitting on this particular jury panel?

[Roragen:] I .. you did ask a question earlier, and sitting here, I've been thinking about it. You said there would be police officers testifying.

Q Uh-hum.

A And just sitting here, I think I might believe a police officer a little more maybe than somebody else. Because if they said they saw something, they are trained to see and remember what they see; probably that might make me believe them a little bit more.

Q Okay, so you think you would give greater weight to a police officer's testimony because he's a police officer?

A Yes, I think so.

Later the prosecutor inquired of Roragen as follows:

Q Of course, when any witness testifies, you can take into consideration that person's training, ability to see and observe and that kind of thing.

But I understand what you're saying is is when a police officer would testify you would take into account those factors, is that right?

A Yes, sir.

Q But as far as his truthfulness is concerned, you would judge his credibility or truthfulness as you would any other witness, is that right?

A Yes.

When defense counsel challenged venireperson Roragen for cause, the trial court had the following to say:

When she first brought that up she said where a police officer is trained to observe, she would give greater weight to something that he had said he'd observed. She did not say that she would give greater weight to his credibility. And, of course, we instruct the jurors that they are .. and to determine the credibility of the witnesses, they're to consider the witnesses' ability to observe and remember and relate what has been seen. So she's entitled to do that, but I did not understand her to say that the mere fact that somebody's a police officer would cause her to think they were more truthful than anybody else. It simply was that if a police officer testified to something that was in his training, she would consider his training and evaluate the weight it should be given. And I think she is entitled to do that, just as she would anybody else who was trained in a certain field. So the challenge to juror [Roragen] would be overruled.

█ In deciding the qualifications of prospective jurors, the trial court possesses very wide discretion and its ruling will not be disturbed on appeal except when it is clearly against the evidence and constitutes a clear abuse of discretion. *State v. Hopkins*, 687 S.W.2d 188, 189 (Mo. banc 1985). To protect the criminal accused's right to fair and impartial jurors who will follow the law, he must be given a full panel of qualified veniremen from which to make his afforded peremptory challenges. Albeit the court nisi's refusal to sustain a

valid challenge for cause constitutes reversible error, its employment of its wide discretion in deciding the qualifications of a venireman will not be disturbed on appeal unless there be a clear abuse of discretion and a real probability of injury to the defendant. No definite rule can be conceived for all cases as to when challenges for cause should be sustained. There surely will be instances when appellate courts might have done differently than the trial court but cannot properly rule the trial court abused its discretion. Each case is to be judged on its own particular facts. The decision of the trial court on the qualifications of a venireman, of necessity, involves its observations and judgment of the prospective juror's demeanor and its interpretation and evaluations of the answers as they relate to whether the venireman will be fair and impartial if chosen. As the trial judge is better positioned to make that decision than we from the cold record, doubts as to the court nisi's findings will be resolved in its favor. *State v. Smith*, 649 S.W.2d 417, 421–422[2–7] (Mo. banc 1983), and cases there cited.

■ There are many cases where a venireman has initially expressed a tendency to believe a police officer over other witnesses but on further inquiry indicated an ability to evaluate all testimony by the same standard. In such cases no error was found by reason of the trial court's overruling a challenge for cause. *State v. Cuckovich*, 485 S.W.2d 16, 22–23[9][10][11] (Mo banc. 1972); *State v. Pitchford*, 556 S.W.2d 57, 61[6] (Mo.App.1977); *State v. Wraggs*, 512 S.W.2d 257, 259[5] (Mo.App.1974). In the instant case the voir dire examination of venireperson Roragen *as a whole* demonstrates she would give preference to police testimony only in an area in which the police witness had the benefit of special training. "It is part of a juror's privilege and duty to take such an element into consideration in evaluating the credibility of a witness." *State v. Harrell*, 637 S.W.2d 752, 757 (Mo.App.1982); *State v. Shields*, 619 S.W.2d 937, 939 (Mo.App.

1981); MAI–CR 2d 2.01. Defendant's first point is denied.

■ Without restraint, defendant's second point relied on consumes an elongated elaboration on the legality, vel non, of defendant's arrest and the seizure of the rubber boots he was wearing when apprehended. We note, summarily, that nowhere does defendant contend his confession was involuntary. Also, there is no claim the boots worn exteriorly on defendant's feet were not in "plain view." An unreasonable search and unlawful seizure cannot occur relative to items observed in the plain view of an officer while he is, as here, performing legitimate investigative functions. *State v. Smith*, 675 S.W.2d 690, 693[1, 2] (Mo.App.1984). Furthermore, the undisputed voluntary nature of defendant's confession renders it unnecessary for us to determine the legality, vel non, of his arrest. *State v. Collins*, 593 S.W.2d 621, 624 (Mo.App.1980). Defendant's second point is without merit and is denied.

Defendant's third and final point relied on is a claim the trial court committed plain error in giving the jury instruction numbered 4 because said instruction defined "proof beyond a reasonable doubt" as proof that leaves jurors "firmly convinced," and thus diminishes the meaning of "proof beyond a reasonable doubt."

■ There are several things amiss with this point. Defendant did not raise this objection in his motion for a new trial and therefore waived this issue on appeal [Rule 29.11(d) ][1] so that it can be entertained only under the plain error standard. Rule 29.12(b). Instruction No. 4 is an exact copy of MAI–CR 2d 2.20, and Rule 28.02(c) mandates that "Whenever there is an MAI–CR instruction ... applicable under the law to the facts, the MAI–CR instruction ... shall be given ... to the exclusion of any other on the same subject." Moreover, Notes on Use 3 under MAI–CR 2d 2.20 directs: "No other instruction may be given elaborating further upon or attempting to define the presumption of innocence,

---

1. References to rules are to Missouri Rules of 721 S.W.2d—7

Court, V.A.M.R.

reasonable doubt or proof beyond a reasonable doubt." Furthermore, the Court of Appeals has no authority to declare erroneous those instruction forms and their accompanying Notes on Use which have been adopted for standard use by the Supreme Court. *State v. Outley,* 693 S.W.2d 184, 188 (Mo.App.1985).

Defendant requests us to transfer the cause, sua sponte, to the Supreme Court if we, as already done, find ourselves powerless to declare the instruction erroneous. Here, however, defendant did not object to this instruction at trial or in his motion for a new trial and "[c]onsideration of a constitutional issue raised for the first time on appeal would exceed the powers of this court or our Supreme Court." *Marriage of Schulte,* 546 S.W.2d 41, 44 (Mo.App.1977) and cases there cited. Defendant's third point is denied and the judgment of the trial court is affirmed.

GREENE, P.J., concurs.

FLANIGAN, J., concurs in result only.