STATE of Missouri, Plaintiff–
Respondent,

v.

Harold Craig BIRMINGHAM,
Defendant–Appellant.

No. 25610.

Missouri Court of Appeals,
Southern District.

April 30, 2004.

Daniel T. Moore and John M. Albright, Moore, Walsh & Albright L.L.P., Poplar Bluff, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Stephanie Morrell, Office of the Attorney General, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

Harold Birmingham ("Defendant") appeals his conviction for possession of a controlled substance in violation of section 195.202.[1] Defendant contends the trial court committed reversible error when it denied his motion to suppress certain statements and evidence and allowed their admission into evidence during his jury trial. In addition, Defendant argues that, in the absence of the statements and evidence which should have been suppressed, the State failed to present sufficient evidence to sustain his conviction.

We agree that Defendant's statements were erroneously admitted, but we disagree that the physical evidence should have been excluded. We reverse the judgment of conviction and sentence and remand the case for a new trial.

## STANDARD OF REVIEW

"At a suppression hearing, the State bears both the burden of producing evidence and the risk of non-persuasion to show by a preponderance of the evidence that the motion to suppress should be overruled."[2] *State v. Bradshaw,* 99

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. Here, the parties stipulated that the preliminary hearing testimony would be used as the

S.W.3d 73, 76[2] (Mo.App.2003). In reviewing a trial court's ruling on a motion to suppress, the appellate court considers the record made at the pretrial hearing as well as the trial testimony. *State v. Haldiman,* 106 S.W.3d 529, 533[4] (Mo.App.2003). "In so reviewing, we view the facts in the light most favorable to the order challenged on appeal." *Bradshaw,* 99 S.W.3d at 76[4].

Appellate review is limited to a determination of whether substantial evidence exists to support the trial court's ruling. *State v. West,* 58 S.W.3d 563, 567[1] (Mo.App.2001). The trial court's decision will be reversed only if it is clearly erroneous, leaving this court with a definite and firm impression that a mistake has been made. *Haldiman,* 106 S.W.3d at 533[2]. Furthermore, an appellate court must defer to the trial court's superior ability to adjudge the credibility of witnesses and make factual findings, but whether a constitutional violation occurred is a question of law. *Id.* at 533[7]; *West,* 58 S.W.3d at 567[4].

## FACTS

Ron McCroy ("McCroy") was a probation and parole officer for the state of Missouri assigned to Wayne County. Johnny Brannum ("Brannum") was a deputy sheriff for the Wayne County sheriff's department. On June 27, 2002, McCroy and Brannum sought to arrest Defendant for a parole violation.

Armed with an arrest warrant, McCroy and Brannum contacted Defendant at his residence. McCroy knocked on the door, and Defendant answered, clad only in "boxer shorts" or "something to that effect." McCroy described the events as follows:

> "When I arrived [I] knocked on the door. [Defendant] answered the door. He was in some boxer shorts. I told him to get his clothes on, he was coming with us."
>
> ....
>
> "He just kind of looked at me, turned around and started walking through the living room, and I proceeded to follow him back to his bedroom."

Brannum confirmed this testimony and stated that he followed McCroy into the house. Brannum testified that he followed McCroy for security purposes.

As Brannum walked through the living room, he looked into the kitchen area, and he saw, in "plain view," items which he believed to be drug paraphernalia, namely a straw, a razor blade, and a piece of glass. After seeing the items, Brannum continued walking to the bedroom in order to make sure McCroy was secure. After Defendant and McCroy appeared from the bedroom, Brannum handcuffed Defendant and "set [him] on the couch."

Brannum did not read Defendant his *Miranda* rights while at Defendant's house, either before or after handcuffing him.[3] Brannum explained that he had not anticipated questioning Defendant at that time.

On the other hand, McCroy did question Defendant. McCroy's questions to Defendant came after he had been handcuffed and ordered to sit on the couch. In answering McCroy's questions, Defendant stated that "he was going to cut open the straw and get out the residue and use it."

evidence to rule on Defendant's motion to suppress.

3. In *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). The United States Supreme Court set out what has become known as "the *Miranda* warning" as a means of satisfying the "procedural safeguards" required to protect an individual's privilege against self-incrimination.

Thereon, Defendant was "placed in the patrol car and brought ... back to the courthouse, sheriff's department." McCroy's office was also located at the courthouse.

On July 8, 2002, McCroy questioned Defendant again, but this time at McCroy's office. McCroy's stated purpose was "to get his statements regarding the violations that I arrested him on the warrant and the new charge." McCroy testified that the only rights he was required to tell Defendant were as follows: "[T]hey have the right to remain silent [and] anything they say will be placed in a violation report to the Parole Board." Again, Defendant admitted to possessing the items taken from his kitchen and acknowledged he had planned to get the residue out of the straw for personal use.

Laboratory tests revealed that the straw seized from Defendant's kitchen contained a small amount of methamphetamine, although the weight was never determined. Defendant filed a motion to suppress his statements to parole officer McCroy and the physical evidence seized from the kitchen. The trial court overruled his motion as well as Defendant's timely objections at trial.

After hearing all the evidence, the jury convicted Defendant of possession of methamphetamine. The trial court sentenced him as a persistent drug offender to twenty years' imprisonment. This appeal followed.

### *Point I: Admissibility of Defendant's Statements to McCroy*

In his first point on appeal, Defendant alleges the trial court committed reversible error when it allowed his statements to McCroy to be introduced as evidence before the jury. In essence, Defendant's point is very simple: The undisputed evidence shows that neither of his statements to McCroy were preceded by the *Miranda* warnings; thus, they cannot be used against him in this criminal proceeding.

Generally stated, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. Custodial interrogation refers to questioning initiated by law enforcement officers. *State v. Werner,* 9 S.W.3d 590, 595[3] (Mo. banc 2000). For an interrogation to be custodial, the questioning must occur "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

In determining whether a suspect is "in custody," courts must examine the totality of the circumstances, including the suspect's freedom to leave the scene and the purpose, place, and length of interrogation.[4] *Werner,* 9 S.W.3d at 595. These principles likewise apply to a situation wherein a parole officer questions a parolee about a new or distinct felony, i.e., the officer must "give the parolee all four of the Miranda warnings, where he has been arrested and taken into actual police custody." *State v. Williams,* 486 S.W.2d 468, 474[6] (Mo.1972).

Defendant's motion to suppress alleged, *inter alia,* that his statements to McCroy were inadmissible because he was not read

4. Other factors were enunciated by the Missouri Supreme Court in *Werner.* Primarily, the court adopted those factors from *United States v. Griffin,* 922 F.2d 1343 (8th Cir.1990). We need not recount all of those factors for purposes of this decision.

his *Miranda* rights before being questioned. When the trial court overruled Defendant's motion, it did so without explicitly stating its reasons. On this record, however, the only possible justification for *not* suppressing Defendant's statements to McCroy would be evidence showing that Defendant was *not in custody* when McCroy questioned him. This follows because, under *Williams,* 486 S.W.2d at 474, Defendant was entitled to a full *Miranda* warning from McCroy *if* Defendant was in custody at the time of McCroy's interrogations.

The State concedes the obvious, i.e., that *Miranda* warnings must precede custodial interrogations. They also concede that the first statement (uttered at Defendant's home) was inadmissible. The State argues, however, that Defendant was not "in custody" when he made his second statement at McCroy's office. Consequently, the State claims that the *Miranda* warnings were not required prior to the second statement. The State then argues that harmless error resulted from admitting the first statement because it was identical to the second statement.

The problem with the State's argument and the trial court's ruling, however, is that both presume—without the benefit of any evidence on the subject—that Defendant was not in custody when McCroy conducted the second "interview" of Defendant in McCroy's office. Stated otherwise, there must be evidence that Defendant was "not in custody" when McCroy questioned him to render the *Miranda* warnings inapplicable. Defendant correctly points out that there is no such evidence in this record.[5]

Moreover, the State bore the burden of showing that Defendant's motion to suppress should be overruled. *Bradshaw,* 99 S.W.3d at 76[6]. Once Defendant challenged the admissibility of his statements for lack of the *Miranda* warnings, the State had to prove by a preponderance of the evidence that the statements were admissible, either because the full *Miranda* warning was given or because the *Miranda* warnings were not required. *State v. McWhorter,* 836 S.W.2d 506, 507[1] (Mo.App.1992); *State v. Hayes,* 637 S.W.2d 33, 36 (Mo.App.1982). Here, the State adduced no evidence demonstrating that Defendant was not "in custody" when he made his statement to McCroy. As such, the State has failed to meet its burden of proof.

Consequently, the implicit ruling (noncustodial interrogation) by the trial court is not supported by substantial evidence. The court clearly erred when it admitted Defendant's statements taken in violation of *Miranda* at his jury trial. *Williams,* 486 S.W.2d at 474. Furthermore, in his statements, Defendant essentially confessed to possessing methamphetamine. Their effect on the jury was obviously highly prejudicial. In fact, the State referred to Defendant's remarks during its closing arguments in order to accentuate its point that Defendant was guilty, claiming that his statements made this "an open and shut case." Defendant's first point is granted.

5. Quite to the contrary, the sparse evidence bearing upon this question indicates that Defendant was indeed "in custody." For instance, at trial, McCroy indicated that Defendant was in his "custody" on July 8 (date of the second statement). Moreover, the record does not indicate that Defendant was released from the county jail after he was arrested on June 27. In fact, parole violators cannot be given bail prior to their parole revocation hearing. *See* § 217.720.1. As such, the only reasonable inference is that Defendant was taken from the jail to McCroy's office which is located in the same building.

***Point II: Admissibility of Physical Evidence Seized from Kitchen***

In his second point on appeal, Defendant alleges that the trial court erred in admitting the physical evidence seized from his kitchen (straw, razor blade, and glass) at trial. Defendant admits that the police are generally allowed to seize evidence when that evidence is in plain view. He argues, however, that in order for the plain view doctrine to apply, the officer must *lawfully* be in a place from where he could view the evidence. Defendant asserts that Brannum was not lawfully in his home when he saw the items in the kitchen from his viewpoint in the living room. We disagree.

The Fourth Amendment to the United States Constitution and Article I, Section 15 of the Missouri Constitution are coextensive, both preserving the right of citizens to be free from unreasonable searches and seizures.[6] *State v. Deck,* 994 S.W.2d 527, 534 (Mo.banc 1999). Generally, a warrant based upon probable cause is required to justify a search and seizure. *Id.* In the absence of a warrant, the state has the burden to prove that an exception to the warrant requirement applies. *State v. Martin,* 79 S.W.3d 912, 916[8] (Mo.App. 2002).

The plain view doctrine is regularly invoked in conjunction with other Fourth Amendment principles. *Texas v. Brown,* 460 U.S. 730, 735, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983). "The 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Washington v. Chrisman,* 455 U.S. 1, 5–6, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982). Stated differently, "[a]n unreasonable search and unlawful seizure cannot occur relative to items observed in the plain view of an officer while he is ... performing legitimate investigative functions." *State v. Carpenter,* 721 S.W.2d 154, 157[4] (Mo.App.1986), *overruled on other grounds by State v. Carson,* 941 S.W.2d 518 (Mo.banc 1997).

To briefly recount the facts, McCroy and Brannum sought to arrest Defendant on a parole violation warrant. McCroy knocked on the door, Defendant answered wearing only boxer shorts, and McCroy told him to "get his clothes on, he was coming with us." Without answering or saying anything, Defendant turned around and walked toward his bedroom, leaving the front door open. McCroy followed Defendant, and Brannum followed McCroy for security purposes. As Brannum was walking toward the bedroom, he saw the items in the kitchen in plain view.

Defendant's entire point is based on the assumption that Brannum had no right to follow McCroy and him into the house. The general rule is that, once a suspect is arrested, the police have a right to remain literally at the arrestee's elbow at all times. *Chrisman,* 455 U.S. at 6, 102 S.Ct. 812; *State v. Wise,* 879 S.W.2d 494, 504 (Mo.banc 1994). After the suspect is arrested, many times that person will need to retrieve an item, such as clothing, before being transported to jail. *Id.* at 504–05; *State v. Worthon,* 585 S.W.2d 143, 147–48 (Mo.App.1979); 2 W. LaFave, *Search and Seizure* § 6.4(a) (1978). In those circumstances, police have the right to remain with the suspect, or a third party sent to retrieve the item, in order to

6. It is due to this coextensive protection that federal precedents are persuasive when deciding Missouri cases. *Werner,* 9 S.W.3d at 595; *State v. Welch,* 755 S.W.2d 624, 631 (Mo.App. 1988).

maintain safety and to ensure that person does not destroy evidence. *Chrisman,* 455 U.S. at 6–7, 102 S.Ct. at 816–17; *Wise,* 879 S.W.2d at 504–05; *Worthon,* 585 S.W.2d at 147–48.

Defendant recognizes these foregoing principles, but seeks to distinguish those cases on two bases. First, he argues that the "following at the elbow" principle only applies when the *defendant requests* to get dressed *not* when he or she is so *ordered,* and that this limitation exists to prevent officers from ordering a person in custody to dress differently as a pretext to obtaining additional non-warrant surveillance inside the accused's house.

The rule to which Defendant alludes has had only limited application. This has been explained by Professor LaFave as follows:

> "If the defendant is placed under arrest at a particular place in the premises, even at the front door, the circumstances may be such that he will be allowed to move about the premises prior to departure for the police station. Although this may occur for other reasons as well, it occurs with greatest frequency when the defendant needs to change his clothes or put on additional clothing before departing. Often the defendant will ask that he be allowed to do this, although on some occasions it appears that the police have been the motivating force in causing the defendant to seek out other clothing. In either event, the courts have had little hesitancy in holding admissible evidence discovered by the police as a consequence."

LaFave, *Search and Seizure* § 6.4(a).

Numerous courts have found it irrelevant whether a defendant requests clothing or the police are the motivating force for him or her getting dressed. *See United States v. Wilson,* 306 F.3d 231 (5th Cir.2002), *cert. denied,* 537 U.S. 1240, 123 S.Ct. 1371, 155 L.Ed.2d 211; *United States v. Gwinn,* 219 F.3d 326 (4th Cir.2000); *United States v. Butler,* 980 F.2d 619 (10th Cir.1992); and *United States v. Di Stefano,* 555 F.2d 1094 (2nd Cir.1977). Significantly, this court, in *Worthon,* 585 S.W.2d 143, quoted *Di Stefano* with approval and implicitly accepted the rationale of the *Di Stefano* view on this issue. 585 S.W.2d at 147–48.

Here, Defendant was clad only in boxer shorts. At a minimum, Defendant's own personal safety required that he put on some sort of footwear. Defendant's need for footwear, coupled with minimum decency standards of public decorum, were valid reasons for McCroy to order Defendant to put on clothing.[7] *See Id.; Wilson,* 306 F.3d at 239–40; *Di Stefano,* 555 F.2d at 1101.

Defendant's final argument under this point focuses on the fact that Brannum discovered the contraband. He argues that *only* the officer who is "following at the elbow" may discover evidence in plain view. Apparently, Defendant claims that Brannum was not lawfully in the place from which he viewed the seized evidence.

Defendant's argument ignores Brannum's testimony that he was proceeding toward the bedroom in order to ensure McCroy's safety. As he was walking to the bedroom, he saw the evidence in plain view. Brannum had the right to walk through the living room as he was performing a legitimate law enforcement func-

7. This in no way gives the police carte blanche to intrude upon the privacy of the sloppily dressed solely to satisfy the officers' desire to complete the arrestee's wardrobe. *Butler,* 980 F.2d at 621–22. There is no evidence, however, that the request for Defendant to get dressed was some sort of pretext in order to conduct a search of the home. *Gwinn,* 219 F.3d at 333–34.

tion. *Chrisman,* 455 U.S. at 5–6, 102 S.Ct. at 816; *Wise,* 879 S.W.2d at 504–05; *Carpenter,* 721 S.W.2d at 157[4]. From that vantage point, he was lawfully entitled to seize evidence of a crime in plain view. We reject Defendant's argument to the contrary.

McCroy's and Brannum's entry into the home was not unlawful or unreasonable. The seizure of evidence was similarly lawful as it fell within the purview of the plain view doctrine. The trial court did not clearly err when it overruled Defendant's motion to suppress and his objections at trial to the items being admitted into evidence. Point denied.

***Point III: Proper Disposition of Case***

In his final point on appeal, Defendant alleges the evidence was insufficient to support the judgment of conviction and sentence; therefore, he argues that the proper disposition of the case is an outright reversal and discharge rather than a reversal and remand. He premises his argument on the resolution by this court of his first two points. Defendant claims that "if both Points I and II are denied, [Point III] can be considered abandoned." He further argues that "[i]f the court denies Point II but sustains Point I, excluding [Defendant's] statements, the conviction must still be reversed [outright]." We disagree.

We believe the following disposes of Defendant's third point:

> "When the trial court erroneously admits evidence resulting in reversal, as in the instant case, the State should not be precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency. The prosecution in proving its case is entitled to rely upon the rulings of the court and proceed accordingly. If the evidence offered by the State is received after challenge and is legally sufficient to establish guilt of the accused, the State is not obligated to go further and adduce additional evidence that would be, for example, cumulative. Were it otherwise, the State, to be secure, would have to assume every ruling by the trial court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence."
>
> ....
>
> "In short, neither *Burks v. United States,* [437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)], nor *Greene v. Massey,* [437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978)], proscribes retrial of an accused following reversal of [a] prior conviction predicated upon an incorrect ruling by the trial court as to the admission of evidence even where the discounting of the improperly received evidence resulted in evidentiary insufficiency."

*State v. Wood,* 596 S.W.2d 394, 398–99[3] (Mo.banc 1980). Point denied.[8]

The judgment of conviction and sentence is reversed. The case is remanded for a new trial.

RAHMEYER, C.J., P.J., concurs.

BATES, J., concurs.

8. We have not ignored Defendant's argument that there is no evidence of his knowing and conscious possession of the controlled substance once his statements are excluded. On this record, that may be true. The *Wood* decision, however, mandates that the State be allowed to show his knowing, conscious, and intentional possession via other means upon remand. This follows because the State may have chosen not to present additional or cumulative evidence of such knowledge when the statements, which absolutely showed his awareness, were deemed admissible by the trial court.