**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Jerry PITCHFORD, Defendant-Appellant.**

No. 37942.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 23, 1977.

**58**

Robert C. Babione, Public Defender, Joseph W. Warzycki, Asst. Public Defender, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Roberts, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Nels C. Moss, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Judge.

Defendant Jerry Pitchford was found guilty by a jury of assault with intent to ravish with malice, § 559.180. He was tried under the Second Offender Act, § 556.280, and sentenced by the court to ten years imprisonment in the Department of Corrections. He raises two points on appeal: 1) that the trial court erred in instructing upon the lesser included offense of common assault without including the range of punishment in violation of MAI–CR 2.04; and 2) the trial court erred in refusing the defense challenge for cause of a prospective juror.

Only a brief recitation of the facts is necessary to understand the points on appeal. In order to convict, the jury must have believed the testimony of Shirley Duff, age 18, that on May 10, 1974 defendant entered her home after knocking on the door and being permitted to enter by her 5-year old nephew. Defendant entered her room and told her to take off her clothes or he would kill her, began unzipping his trousers, and struck her jaw with a gun when she refused to remove her clothes. He ran out of the apartment after there was a loud banging noise on the door.

Miss Duff went to the hospital that afternoon and was treated for a swollen jaw. Later that day she went to the police station and identified the picture of defendant's fraternal twin, Perry Pitchford, as her assailant.

About 3 weeks later, Miss Duff was standing outside a cleaners on 20th Street in the City of St. Louis. Her friend, Diane Thompson, was inside the cleaners. Miss Duff saw defendant walking down 20th Street. She recognized him because he walked with a limp and had a burn mark on his neck and also because he was wearing distinctive shoes. She went into the cleaners to tell Miss Thompson that the man walking down 20th Street was the man who had attacked her. Miss Thompson's friend, "Billy B.", was also in the cleaners and he offered to follow defendant in his car. All three of them got in "Billy B's" car and followed defendant until they were at 14th and Market Streets, across from Kiel Audi-

torium where they saw a police officer. They flagged the officer down, explained the situation, and the officer took defendant into custody.

Diane Thompson identified defendant as someone she'd seen on the day Miss Duff was assaulted. Miss Thompson saw defendant on that day on the first floor area of the apartment project "playing with himself."

Defendant's alibi witnesses were his mother, his grandmother, and his mother's common law husband. They testified that defendant was playing cards with his mother and her common law husband during the time the assault on Miss Duff occurred.

At the close of all the evidence, defendant moved for judgment of acquittal, which was denied. The court gave instructions for assault with intent to rape with malice aforethought, and also for the lesser included offenses of assault with intent to rape without malice aforethought, and common assault. All of these instructions consisted of the elements of the offense being instructed upon. None of these instructions included the range of punishment for the offense being instructed upon. The jury returned a verdict of guilty of assault with intent to ravish with malice, the highest degree of the offense.

Defendant claims in his first point that we should reverse and remand because the court erroneously failed to include the range of punishment for common assault when instructing upon that lesser included offense.

As noted, none of the instructions given for the three degrees of assault included a range of punishment. Defendant relies on MAI–CR 2.04, Notes on Use 3(d). In general, special Note 3 describes certain situations where, even though defendant is being tried under the Second Offender Act, the court is required to submit punishment to the jury, but the duty to fix punishment no matter what penalty the jury imposes is still reserved to the court. One such situation is set out in Note 3(d), where, as in the case at bar, the court submits to the jury both a felony and a misdemeanor. In such

a situation the court should submit the range of punishments for both the felony and the misdemeanor. If the jury convicts defendant of a felony, the court will assess the punishment under the Second Offender Act and the jury's assessment will be considered as surplusage or merely advisory. If the jury convicts of the misdemeanor, its assessment of the punishment will stand.

■ Although the trial court erred in failing to instruct on the range of punishment for common assault, errors due to faulty instructions will cause reversal only when the defendant has been prejudiced thereby. *State v. Carter*, 541 S.W.2d 692, 695[8] (Mo.App.1976); *State v. Brewer*, 540 S.W.2d 229, 231[5] (Mo.App.1976).

■ Defendant in his brief fails to explain how he was prejudiced by the court's omitting the range of punishment for the offense of common assault for which he was not convicted. Here defendant was convicted of the highest degree of assault, assault with intent to ravish with malice aforethought. The jury failed to find the defendant guilty of common assault or of assault with intent to ravish without malice aforethought. Thus, it would have been unnecessary for the jury to consider the range of punishment for common assault which is two degrees below the offense for which he was found guilty. A recent case precisely on point reaches the same conclusion. In *State v. Morse*, 514 S.W.2d 375 at 377[4] (Mo.App.1974) it was held that failure to instruct the jury as to the range of punishment for the lesser included misdemeanor was not reversible error where the jury did not convict defendant of the misdemeanor. While *Morse* was tried before the effective date of MAI–CR, we believe the reasoning of *Morse* is applicable here.

Accordingly, we believe the failure to instruct on the range of punishment for common assault was harmless and was cured by the jury verdict which found defendant guilty of assault with intent to ravish with malice aforethought. See *State v. Cook*, 428 S.W.2d 728, 732[3] (Mo.1968). *State v. Tettamble*, 394 S.W.2d 375 (Mo.1965) [17,

18] vacated and remanded on other grounds *Tettamble v. Missouri*, 386 U.S. 265, 87 S.Ct. 1034, 18 L.Ed.2d 42 (1966) readopted 431 S.W.2d 441 (Mo.1968).

Appellant's second point is that the trial court erred in refusing the defense challenge for cause of venireman, Virgie A. Ray. During voir dire, the assistant public defense attorney asked, "May I just see by a show of hands how many of you know a police officer, have a member of your family in law enforcement work?"

"MRS. RAY: I have relatives that are police, and quite a few friends.

"MR. WARZYCKI: And those are St. Louis Police officers?

"MRS. RAY: Yes.

"MR. WARZYCKI: Let me ask you this: From the fact that you have relatives on the police force, would you consider yourself to know more about what a police officer does in the performance of his duties than, say, a person who would not have relatives on the police force?

"MRS. RAY: I wouldn't say so much that, but I have heard a lot of discussion about what goes on.

"MR. WARZYCKI: Okay. Could you give a police officer who would come in here and testify the same measure of credibility—in other words, would you measure what he says by the same standard as you would a civilian witness who would come in here and testify, or would you tend to give a police officer more credibility?

"MRS. RAY: Probably more.

"MR. WARZYCKI: Probably more."

The assistant public defender later moved to strike Mrs. Ray for cause.

"MR. WARZYCKI: Your Honor, at this time I would move to strike for cause Juror No. 335, Virgie A. Ray, for the reason that she stated that she would tend to believe police officers more than she would—

"MR. MOSS: She said she might.

"THE COURT: Mrs. Ray, step up.

"MR. MOSS: Mrs. Ray, Mr. Warzycki asked you a question concerning police officers and you indicated that you knew a number of them.

"MRS. RAY: Yes.

"MR. MOSS: Okay. The law requires that you treat police officers by the same standards, judge their testimony by the same standards, not give them any greater benefit nor take anything away from them.

"MRS. RAY: True.

"MR. MOSS: Okay. Do you feel you can do that or not?

"MRS. RAY: That's not what he asked me.

"MR. MOSS: Do you feel that you could judge their testimony by the same standard?

"MRS. RAY: I think I can.

"MR. MOSS: Okay.

"THE COURT: Mr. Warzycki, you have any additional questions?

"MR. WARZYCKI: No, your Honor.

"THE COURT: Your objection overruled."

■ A defendant is entitled to a full panel of qualified jurors before he makes peremptory challenges. *State v. Lovell*, 506 S.W.2d 441, 443[1] (Mo. banc 1974); *State v. Richards*, 536 S.W.2d 779, 785[3] (Mo.App. 1976).

■ Section 546.100–.150 RSMo lists narrow grounds for disqualifying jurors. These are not exclusive. To be a competent juror it is necessary to be disinterested and free from bias and prejudice. *State v. Tippett*, 538 S.W.2d 756, 758 (Mo.App.1976). Denial of a defendant's legitimate request for exclusion of a challenged juror is reversible error. *State v. McGrew*, 534 S.W.2d 549, 550[1] (Mo.App.1976); *State v. Wraggs*, 512 S.W.2d 257, 259[1] (Mo.App.1974). However, it is within the discretion of the trial court to determine the propriety of sustaining a challenge for cause, *State v. Ford*, 495 S.W.2d 408, 415–416 (Mo. banc 1973) and his decision will not be reversed unless there is clear abuse of discretion. *State v. Land*, 478 S.W.2d 290, 292[1] (Mo. 1972); *State v. McGrew*, supra at 551[3]. All doubts should be resolved in favor of

the trial court's ruling, since he has the advantage of observing the demeanor of the venireman. *State v. Harris*, 425 S.W.2d 148, 155[8] (Mo.1968); *State v. Wraggs*, supra, 512 S.W.2d at 259[4].

 Defendant claims that his challenge for cause of Virgie Ray was erroneously denied because she "indicated that she would probably give a police officer's testimony greater credibility than a civilian witness." Defendant argues that the defense was then forced to use a peremptory challenge to remove her from the jury.

We do not believe that juror Ray demonstrated such a bias in favor of police testimony that would disqualify her from sitting on the jury. Although she initially said that she would give "probably more" weight to police testimony, once she was instructed that the law required her to judge officers by the same standard as civilians, she acknowledged that this was "true." She stated "That's not what he asked me," indicating that if she had been instructed this way originally, she would not have said that she would "probably" give an officer's testimony more credibility. And finally when asked if she could judge police testimony by this standard, she replied, "I think I can."

This case is similar to the facts in *State v. Wraggs*, 512 S.W.2d 257 (Mo.App.1974) where the prospective juror initially stated that she would "naturally" give greater weight to police testimony. The trial court's refusal to dismiss her was upheld on appeal due to her subsequent responses where she stated she would evaluate all witnesses by the same standards. In *Wraggs*, the prospective juror's deceased husband had been a police officer for 22 years, and she herself had formerly been employed by the Police Department for 6 years. The venireman was found to be a qualified juror.

It is of little consequence that Mrs. Ray responded to the final question by saying, "I *think* I can." (Emphasis added). This does not necessarily indicate that she was equivocating.

In *State v. Webster*, 539 S.W.2d 15, 17[1] (Mo.App.1976) the venireman answered "I don't believe so" when asked if his friendship with the prosecutor would cause him to be more sympathetic to the State's case. The court stated, "On this cold record there is no way for the court to determine if the answer meant that [the venireman] had doubt that he could render a fair and impartial verdict . . . , or whether it was his personal manner of speaking and indicated a positive belief that he could render a fair verdict."

Accordingly, in view of the trial judge's better opportunity to judge the qualification of a venireman based on his personal observations, we do not believe that Mrs. Ray demonstrated that she was so biased that the denial of the challenge for cause was an abuse of discretion.

The judgment is affirmed.

CLEMENS, P. J., and SMITH, J., concur.