**STATE of Missouri, Respondent,**

v.

**Frederick E. JENKINS, Appellant.**

**No. WD 39269.**

Missouri Court of Appeals,
Western District.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 2, 1988.

Application to Transfer Denied
March 15, 1988.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

PRITCHARD, Presiding Judge.

By a verdict of a jury, appellant was found guilty of Count I, robbery in the first degree, and Count II, assault in the first degree, on June 3, 1986. On March 20, 1987, he was sentenced to ten years on Count I and to fifteen years on Count II, and the sentences were ordered to run concurrently.

In his single point, appellant contends that the trial court erred in overruling his motion to dismiss the information because the four year delay between the time he became an accused and the date of trial, which denied him his right to a speedy trial under the Sixth Amendment to the U.S. Constitution and Const. Mo., Art. I, § 18(a).

The facts relating to the claim are these: On March 31, 1982, Keith Harrison and Lee Leonard were in the Solid Gold Lounge at 5041 Prospect, and left there about 12:30 a.m. going to a parking lot where they entered Leonard's car. As Harrison closed the passenger door, a man opened it and pointed a gun at his face and demanded money from the two men. When they did not comply, the gunman hit Harrison in the face with the gun and demanded his watch. The gunman then demanded Leonard's watch and money from both of them. The man asked for Leonard's jacket and when Leonard resisted, the gunman hit him in the head with the gun. Leonard then got out of the car and came around to the passenger side and tried to persuade the man to leave. After a verbal exchange, Harrison heard a shot and saw Leonard fall to the ground. Harrison then ran from the parking lot to a street where he tried to stop traffic to call the police. He was picked up finally by the police in a paddy wagon and was taken to the police station where he gave a written statement and a description of the person who shot Leonard. Harrison was unable to identify the gunman from photographs then shown him, but about six weeks later, about April 9, 1982, he was able to pick out the gunman from a group of color photographs.

Appellant was originally arrested and booked in connection with the March 31 incident on May 14, 1982, but was released within 20 hours (Rule 22.06) because of the state's inability to get the complaining witnesses to sign an affidavit to file a complaint. On June 3, 1982, however, a complaint was filed in the associate circuit court charging the appellant with robbery and assault and on that date, an arrest warrant was issued. Despite repeated efforts of the police to serve the warrant upon him at his last known address, 4907 Agnes, appellant was not arrested until December 26, 1985, when he was apprehended when, during a car check, the police learned through a computer check that two warrants had been issued for appellant in 1982. His trial began on May 29, 1986.

Appellant relies upon *State v. Holmes,* 643 S.W.2d 282 (Mo.App.1982), but upon its facts, that case may be distinguished. There, a robbery occurred of a liquor store in Clay County, Missouri, on August 2, 1979, and a short time later the clerk of the store identified defendant from photographs. In mid-November, 1979, defendant was apprehended in St. Louis, at which time he was wanted not only in Clay County but also in Jackson County for manslaughter. A Jackson County detective, Whitaker, and a Clay County detective, Wells, went to St. Louis to pick up defendant, apparently on a Jackson County warrant, and Wells told defendant on the trip back of the Clay County offense and his implication therein. The detectives held a showup in Kansas City the next day, defendant being told the reason for which was the Clay County robbery. The liquor store clerk identified him as the robber. The same day a Clay County complaint was filed and a warrant for arrest was issued, but never filed in Jackson County, although there was a record there, "Hold for Clay County". Defendant was tried and convicted of manslaughter in Jackson County and sent to the Division of Corrections, where there was no record of the Clay County proceedings, nor a detainer, filed. While defendant was in an Honor Center, the outstanding Clay County warrant was discovered, and he was arrested on it on June 5, 1981, a pretrial motion to dismiss was overruled, and he was tried and convicted

22 months after his St. Louis arrest by the two detectives. The judgment of conviction was reversed upon the ground of violation of defendant's speedy trial rights.

In the *Holmes* case, it was properly held that the arrest of defendant, and subsequent proceedings, were a joint enterprise of the two detectives for the reciprocal benefit of the two counties. As a result thereof, the Clay County complaint was filed and the arrest warrant issued for defendant for the robbery charge there, but neither was served on defendant, lodged with the Division of Corrections, nor was a detainer lodged which would have given defendant the right to a final disposition of the charge under the Uniform Mandatory Disposition of Detainers Law, § 222.080, et seq., RSMo 1978. Importantly, the Clay County authorities knew that defendant was in jail in Jackson County on and after November 14, 1979, and knew or should have known of his whereabouts (in the state penal institutions) at all times, yet they did not inform the state correctional authorities of the outstanding Clay County warrant. No such facts are present in this case.

What has happened here is that within the 20 hour time limit of Rule 22.06, the state was unable to get witness support for the filing of a complaint against appellant as a basis for issuing an arrest warrant which would have enabled it to detain appellant beyond 20 hours. Under the Rule, therefore, the state had no alternative other than to release appellant, which was done. When the complaint was finally filed on June 3, 1982, and an arrest warrant issued, the two detectives, then assigned to the Fugitive Apprehension Unit, were unable to locate appellant at his last known address. The record shows that they checked the 4907 Agnes address several times, anywhere from 10 to 15 times, and also showed appellant's mug shot to persons around 12th and Woodland, where people had seen him, but the detectives could never close in on him. District officers in the area of the address of the subject, along with support units, were also notified, and the information as to the arrest warrant was placed in the computer.

The facts show that there was no negligence of the officers in executing the arrest warrant as was present in the *Holmes* case, page 287, supra. Thus, the warrant could not be executed until the fortuitous stopping of appellant's vehicle in the car check, when, as the record shows, appellant gave his name as Jolly, but a passenger in the car informed the officer that his true name was Jenkins.

Appellant argues that the triggering date for the running of the time for a speedy trial was the date of his initial arrest, May 14, 1982, and he did not stand trial until May 29, 1986. There is broad language in the *Holmes* case, supra, page 285[3], "Although it was once held that the accusation stage did not commence until the filing of an indictment or information, it has now become authoritatively settled that this stage may also be commenced by the placing of the defendant under arrest. The rule now is that the time for purposes of speedy trial under the Sixth Amendment begins to run from the time of the indictment or information or an arrest, whichever occurs first." In the there cited case of *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 479 (1971), the court plainly held that "it is either a formal indictment or information or else *the actual restraints imposed by arrest and holding to answer a criminal charge* that engage the particular protections of the speedy trial provisions of the Sixth Amendment." [Italics added.] In *State v. Paxton*, 535 S.W.2d 558 (Mo.App. 1976), defendant was detained for trial from the time of his arrest as a juvenile; in *State v. Black*, 587 S.W.2d 865 (Mo.App. 1979), the defendant was also held from the time of his arrest until trial; and in *State v. Haddix*, 566 S.W.2d 266 (Mo.App.1978), defendant, who had escaped, was taken into custody when apprehended because of his unserved sentence to confinement, and was not arrested on the escape charge. Clearly, the *Holmes* case and the *Marion* case apply only to an arrest and a subsequent detention for trial, and not to the situation where he is mandatorily released under the 20 hour rule, after which he is in the status

of being an unapprehended fugitive whose whereabouts is unknown to the authorities. The delay here was not occasioned by any dereliction of the state. Appellant's point is ruled against him.

The judgment is affirmed.

All concur.